1  Gary S. Casselman, SBN 81658
   Danielle L. Casselman, SBN 170622
2  **Law Offices of Gary S. Casselman**
   3415 South Sepulveda Blvd., Suite 100
3  Los Angeles, CA 90034
   Tel. 310/314-4444  Fax 310/314-4447
4  garyscasselman@gmail.com

5  Thomas E. Beck, Esq. (SBN 81557)
   **The Beck Law Firm**
6  10377 Los Alamitos Boulevard
   Los Alamitos, California 90720
7  Telephone No. (562) 795-5835
   Facsimile No.  (562) 795-5821
8  Email:  becklaw@earthlink.net

9  Attorneys for Plaintiff

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  MARK POMPANO,                    ) | CASE NO.  CV 04-7929 RJK (RCx) |
| 15          Plaintiff,              ) | PLAINTIFF'S MEMORANDUM OF |
| | CONTENTIONS OF FACT AND LAW |
| 16      v.                          ) | |
| | DATE:      August 31, 2009 |
| 17  CITY OF HERMOSA BEACH,          ) | TIME:      1:30 P.M. |
| DONOVAN SELLAN, GEORGE             ) | CTRM:      1639 |
| 18  BRUNN, DONALD JONES,            ) | TRIAL:     Not set |
| MICHAEL LAVIN, and DOES 1          ) | |
| 19  through 10,                     ) | Assigned for all purposes to Hon. Robert J. |
| | Kelleher |
| 20          Defendants              ) | |
| 21  ─────────────────────────────  ) | |

22          TO THE HONORABLE COURT, DEFENDANTS AND THEIR COUNSEL:

23          Plaintiff Mark Pompano hereby files his Contentions of Law and Fact in accordance

24  with Central District Local Rule 16-2.8.

25

26  DATED:  August 30, 2009                    Respectfully Submitted,

27                                             /s/
                                               GARY S. CASSELMAN
28                                             Attorney for Plaintiff

TABLE OF CONTENTS

**Page**

I.    CONTENTS OF FACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.    STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.    PLEADINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            Federal Civil Rights Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      C.    PERSONAL INJURIES SUSTAINED. . . . . . . . . . . . . . . . . . . . . . . 7

      D.    ITEMIZED STATEMENT OF DAMAGES. . . . . . . . . . . . . . . . . . . 7

      E.    PLAINTIFF'S AGE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      F.    RES IPSA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      G.    LAW AND REGULATIONS VIOLATED. . . . . . . . . . . . . . . . . . . . 8

      H.    PUNITIVE/EXEMPLARY DAMAGES. . . . . . . . . . . . . . . . . . . . . 8

II.   CONTENTS OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    JURISDICTION OVER PLAINTIFFS' LAWSUIT. . . . . . . . . . . . . . 9

      B.    ACTIONS REDRESS ABLE UNDER 42 U.S.C. § 1983. . . . . . . . . . . . . 9

            1.    Under Color of State Law. . . . . . . . . . . . . . . . . . . . . . . . 10

            2.    Freedom from Reprisals for Verbal Challenges to Peace
                  Officers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            3.    Freedom From Unreasonable Uses of Force. . . . . . . . . . . . . . 11

            4.    Freedom from Unreasonable Seizures. . . . . . . . . . . . . . . . . . 13

            5.    Failure to Intervene Violates Constitutional Rights. . . . . . . . . . 14

      C.    COMPENSATORY DAMAGES ARE RECOVERABLE FOR
            ALL DETRIMENT PROXIMATELY RESULTING TO
            PLAINTIFF FROM AN OFFICER'S MISCONDUCT. . . . . . . . . . . . . 15

      D.    EXEMPLARY DAMAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      E.    SUPERVISORY LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      F.    QUALIFIED IMMUNITY IS NOT AVAILABLE TO A
            PUBLIC OFFICER WHO MANUFACTURES PROBABLE
            CAUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      G.    ATTORNEYS FEES MAY BE AWARDED TO
            PLAINTIFF IN A SECTION 1983 ACTION. . . . . . . . . . . . . . . . . . 18

III.    EVIDENTIARY PROBLEMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    A.    Burden of Proof.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    B.    Defense burden to prove probable cause. . . . . . . . . . . . . . . . . . . . . . . . . 21

    C.    Admissibility of Defendants' Uncharged Misconduct. . . . . . . . . . . . . . . 21

    D.    Specific Intent to Deprive Plaintiff of a Constitutional
        Right is Not an Element of a Proof in a Section 1983 Action.. . . . . . . . . 23

    E.    Punitive Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.    A TIMELY JURY DEMAND WAS MADE BY PLAINTIFF IN CONFORMITY
    WITH RULE 38, FEDERAL RULES OF CIVIL PROCEDURE  AND  LOCAL
    RULE  38-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES

Cases:

*Act Up!/Portland v. Bagley*
988 F.2d 868 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Alexander v. City and County of San Francisco*
29 F.3d 1355 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Anderson v. Creighton*
483 U.S. 635; 107 S. Ct. 3034 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Antelope v. George*
211 F.Supp. 657 (D. Ind 1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Arceneaux v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,*
767 F.2d 1498, 1503-1504 & n.1. (11th Cir. 1985). . . . . . . . . . . . . . . . . . 16,23

*Armster v. City of Riverside*
611 F.Supp. 103 (C.D.Cal. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Baker v. Monroe Township*
50 F.3d 1186, 1192-94 (3rdCir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Barrett v. Harrington*
130 F.3d 246 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Blanford v. Sacramento County*
406 F.3d 110, 1110 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Beier v. City of Lewiston*
354 F.3d 1058, 1065 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Beck v. Ohio*
379 U.S. 89, 91 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bird v. Figel*
725 F.Supp. 406, 412 (N.D.Ind.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Block v. Ribar*
156 F.3d 673 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Black v. Stephens*
662 F.2d 181 (3rd Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Bruner v. Duniway*
689 F.2d 442 (6th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Byrd v. Brishke*
466 F.2d 6 (7th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cabrera v. City of Huntington Park*
159 F.3d 374, 380 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iv

*Cameron v. Fogarty*
649F.Supp. 3,5 (E.D.N.Y. 1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Carlson v. Green*
446 U.S. 14, 22 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Carson v. Polley*
689 F.2d 562, 572 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cervantez v. J.C. Penny Co.*
24 Cal.3d 579, 592 (1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chatman v. Slagel*
107 F.3d 380, 384-85 (6th CIr. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Canton v. Harris*
(1989) 489 U.S. 378, 109 S.Ct. 1197. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cohen v. Norris*
313 F.2d 24, 29-30 (9th Cir. 1963).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 23

*Collins v. Jordan*
110 F.3d 1363, 1369 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Commonwealth of Pennsylvania v. Baranyal*
(1981) 659 F.2d 306, 320. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cunningham v. Gates*
229 F.2d 1271, 1289 (9th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Daniels v. Williams*
474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662, 668 (1986).. . . . . . . . . . . . . . . . . . . . 9

*Del La Cruz v. Kauai County*
537 U.S. 1053, 123 S.Ct. 608, 154 L.Ed.2d 531(2002). . . . . . . . . . . . . . . . . . . . . .18

*Del Fargo v. City of San Juan Bautista*
857 F.2d 638 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dellums v. Powell*
566 F.2d 167, 175-76 (D.C.Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Deorle v. Rutherford*
272 F.3d 959 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Donovan v. Reinhold*
433 F.2d 737 (9th Cir. 1970).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Doty v. Seawall*
908 F.2d 1053 (1st Cir 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dubner v. City and County of San Francisco*
266 F.3d 959, 964 (9th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

1    *Duran v. City of Douglas, Ariz.*,
     904 F.2d 1372, 1378 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
2
     *Fitzgerald v. City of Los Angeles*
3    485 F.Supp2d 1137 (C.D.Cal. April 20, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

4    *Franco v. Kelly*
     854 F.2d 584, (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5
     *Gagnon v. Ball*
6    696 F.2d 17, 21 (2nd Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

7    *Gasho v. United States*
     39 F.3d 1420, 1438 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
8
     *George v. City of Long Beach*
9     973 F.2d 706, 710 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

10   *Gill v. Manuel*
     488 F.2d 799, 801 (9th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
11
     *Gilker v. Baker*
12   576 F.2d 245 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

13   *Gomez v. Toledo*
     446 U.S. 35 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
14
     *Gordon v. Norman*
15   788 F.2d 1194, 1199 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

16   *Gregory v. Thompson*
     500 F.2d 59, 61 (9th Cir. 1962)]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
17
     *Gray v. Spillman*
18   925 F.2d 90, 93 (4th Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19   *Hammer v. Gross*
     932 F.2d 842, 846 (9th Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
20
     *Hansen v. Black*
21   885 F.2d 642 (9th Cir. 1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

22   *Harlow v. Fitzgerald*
     457 U.S. 800, 818, 102 S.Ct. 2727 (1982) 73 L.E.d2d 39 (1982). . . . . . . . . . . . . . . . 17
23
24   *Harris v. Roderick*
     126 F.3d 1189, 1205 (9th Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
25
     *Headwaters Forest Defense v. County of Humbolt*
     240 F.3d 1185, 1199, (9th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
26
     *Hensley v. Eckerhart*
27   461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28

1

*Hopkins v. Andaya*
958 F.2d 881 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2

*Houston v. Hill* (1987) 482 U.S. 451, 461,

3
[96 L.Ed.2d 398, 411-412, 107 S.Ct. 2502]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4
*Ingram v. Wright*
430 U.S. 651 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

5

*Ismail v. Cohen*

6
899 F.2d 183 (2nd Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7
*Jacobs v. City of Chicago*
215 F.3d 758, 774-75 (7th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8

*Jackson v. Dukes*

9
259 F.2d 3 (5th Cir. 1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

10
*Jennings v. Daniels*
476 F.2d 1271 (8th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

11

12
*Kerr v. City of Chicago*
424 F.2d 1134, 1139-1140 (7th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13
*Knox v. Southwest Airlines*
124 F.3d 1103 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14

15
*Larez v. City of Los Angeles*
946 F.2d 630, 645 (9th Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6, 12, 17

16
*LeLonde v. County of Riverside*
204 F.3d 947, 961 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17

18
*Leonard v. Argento*
699 F.2d 874, 896 (7th Cir 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

19
*Lindgren v. Curry*
451 F.Supp.1073, 1075 (C.D. Cal 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

20

21
*Liston v. County of Riverside*
120 F.3d 965, 976 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22
*McHenry v. Chadwick*
896 F.2d 184 (6th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

23

24
*Malley v. Briggs*
475 U.S. 335, 341, 89 L.Ed.2d 271, 278 (1986). . . . . . . . . . . . . . . . . . . . . . .17, 18

25
*Martin v. Duffie*
463 F.2d 467 (10th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

26

27
*Marshall v. Sawyer*
301 F.2d 639, 646 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

28

*Memphis Community School District v. Stachura*
477 U.S. 299, 307. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mendocino Environmental Center v. Mendocino County*
192 F.3d 1283, 1295 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Menotti v. City of Seattle*
409 F.3d 1113 (9th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Monell v. N.Y. Dept. of Social Services*
436 U.S. 658 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Monroe v. Pape*
365 U.S. 167, 171 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 23

*Moon v. Winfield*
368 F.Supp. 843 (N.D. Ill. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Morrow v. Dillard*
580 F.2d 1284 (5th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nadell v. Las Vegas Metropolitan Police Department*
268 F.3d 924, 929 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Newman v. Piggie Park Enterprises, Inc.*
390 U.S. 400 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*O'Neill v. Krezemiski*
839 F.2d 9, 10-11 (2nd Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Owen v. City of Independence*
445 U.S. 622, 649-50.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pacific Mutual Life Ins. Co. v. Haslip,*
499 U.S.1,  111 S.Ct. 1032, 1044-45 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*Palmer v. Sanderson*
9 F.3d 1433, 1434-36 (9th Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Parratt v. Taylor*
(1981) 451 U.S. 527, 536. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Patzig v. O'Neill*
577 F.2d 841, 849 n.9 (3d Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Peng v. Mei Chin Penghu*
335 F.3d 970, 976 (9th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sala v. County of Suffolk*
604 F.2d 207 (2d Cir.1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Saucier v. Katz*
533 U.S. 194, 201 121 S.Ct. 2151, 150 L.Ed.2d 272(2001).. . . . . . . . . . . . . . . . . .17

*Sloman v. Tadlock*
21 F.3d 1462, 1467 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stanford Daily v. Zurcher*
550 F.2d 464 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stringer v. Dilger*
313 F.2d 536, 540 (10th Cir. 1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Smith v. City of Hemet*
394 F.3d 689, 701 (9th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Smith v. Wade*
461 U.S. 30 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Symkowski v. Miller*
294 F.Supp. 1254 (E.D. Wis. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tennessee v. Garner*
471 U.S. 1, 105 S.Ct. 1694 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Terry v. Ohio*
392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). . . . . . . . . . . . . . . . . . . .18

*Robins v. Harum*
773 F.2d 1004 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Robinson v. Solano County*
278 F.3d 1007, 1014-15 (9th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Telfair v. Gilberg*
868 F.Supp. 1396, 1412 (S.D. Ga. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Turmon v. Jordan*,
405 F.3d 202, 208 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Watkins v. City of Oakland*
145 F.3d 1087 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Webb v. Hiyrel*
713 F.2d 405 (8th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Whirl v. Kern*
407 F.2d 781 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Statutes & Rules

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 23

FRE Rule 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

FRE  404 (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

F.R.E 405. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

F.R.E. 406. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

F.R.E. 608(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

F.R.E. 608(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Other Sources

*Uncharged Misconduct Evidence*, Edward J. Imwinklreid, Chapter 7, Civil Cases.]. . . . 21

1  **I.      CONTENTIONS OF FACT**

2  **      A.      Statement of the Case**

3        During the evening hours of October 4, 2003, plaintiff Mark Pompano, an off-duty

4  LAPD sergeant, was called to the front door of the Manhattan Beach residence of Ms. Lela

5  Madison during a 40th birthday party for her daughter.  A noise call from a neighbor had been

6  attended by defendants, 2 Hermosa Beach police officers, Donovan Sellan and George

7  Brunn, who had gone to the home in Manhattan Beach on a noise call.  The call was not

8  handled by Manhattan Beach Police because another incident at a local establishment had

9  apparently depleted their ability to respond to other calls.  The homeowner, Ms. Madison,

10  informed them that the noise problem (from a disc jockey at the party) would be resolved,

11  but was surprised at the complaint because most of the neighbors were in attendance.

12        Plaintiff, called to the door to assist the homeowner because of the officious attitude

13  and threats from defendants, did not then identify himself as a policeman.  Upon plaintiff's

14  request, defendants informed plaintiff that the noise complaint came from a neighbor on 9th

15  Street, a block North of the location.  Plaintiff and a friend, Brian Loudermilk, walked out

16  to the sidewalk, going Westbound to listen to how far the sound carried from the party.

17  Plaintiff and Loudermilk walked in the opposite direction from the complaining party who

18  lived in a residence on the next block.  Plaintiff observed defendants standing next to their

19  police cars, arms folded, glaring at them from the street.  To his friend and not to defendants,

20  plaintiff stated "Look at the gestapo over there."  This protected speech apparently enraged

21  defendant Sellan and he and his partner ordered plaintiff to stop, as they ran across the street

22  toward him.

23        Plaintiff stopped as ordered, but was nonetheless forcefully struck in the shoulder by

24  the onrushing defendant Sellan.  This unnecessary force spun plaintiff around and caused

25  him pain, though he had not resisted in any way.  Defendants grabbed and pulled plaintiff's

26  arms behind his back and handcuffed him.  Mr. Pompano was not told before the blow that

27  he was under arrest or to place his hands behind his back; force was applied as a first option.

28  This arrest was without probable cause, the force was unnecessary and excessive, nor was

1

1  plaintiff then told the purported reason for the arrest, all in violation of California law.  Mr.

2  Pompano was not then told that he was under arrest for violation of California Penal Code

3  § 647(f), *i.e.*, being a danger to oneself or another due to intoxication.  Plaintiff had only

4  consumed 1 ½ small glasses of white wine with food over a period of an hour or more up to

5  that time.  This was hardly a measurable amount of alcohol, certainly insufficient to cause

6  any notable impairment, much less result in a danger to oneself or others.  Several others in

7  attendance at the party, including a retired Fresno deputy sheriff, observed the incident,

8  opining that plaintiff had done nothing wrong or illegal and was certainly not under the

9  influence of alcohol or intoxicated, much less a danger to himself or others.

10  Pulled  across the street by defendants, plaintiff called to his friend to notify his

11  neighbor, an attorney, of the arrest.  Sellan responded by telling plaintiff to "shut up" then

12  forcefully grabbed Pompano's neck from behind, then "C-clamped" it, causing pain and

13  dizziness to Pompano.  Then, defendants shoved the handcuffed Pompano into the back of

14  the police car onto the hard plastic seat, requiring plaintiff to right himself into a seated

15  position.  Sellan failed to fasten the seatbelt for the handcuffed passenger, then drove the

16  police car "like a manic" with Pompano in the back seat.  Sellan  failed to stop for stop signs,

17  slowing to 15-20 miles an hour and proceeded 45-50 miles per hour around curves and hills,

18  causing the handcuffs which had not been double-locked to cinch tighter and tighter on

19  plaintiff's wrists.  Pompano was thrown around the back seat and into the divider from the

20  front seats.

21  At the police station – a ride of a few minutes according to defendant Sellan – plaintiff

22  was confronted by the night watch commander, defendant Officer Jones.  Sellan falsely

23  informed Jones that plaintiff was arrested for P.C. 647(f) and had called them gestapo and

24  "assholes."  Plaintiff truthfully stated to Jones that he had only used the term "gestapo" to

25  his friend, had not addressed defendants and had not referred to them as "assholes."  After

26  being cursed by Jones, plaintiff as required by LAPD reported that he was a police sergeant

27  with the Los Angeles Police Department.  Defendants Sellan and Jones laughed and taunted

28  him, stating that he was probably a terminated officer.

1    Inside the station, as plaintiff was about to be fingerprinted, defendant Sellan searched
2  through plaintiff's wallet and to his surprise, found plaintiff's police identification card.  He
3  became nervous, stating "I never arrested an officer before."  Brunn had now arrived by
4  separate police car.  Plaintiff requested a breath test to obtain evidence to confirm his
5  negligible or low level of alcohol, but was refused. He, Sellan, Brunn and jailer Traci
6  Cochran were present when defendant Jones told plaintiff that he should apologize to
7  defendants Sellan and Brunn.  Plaintiff refused and invoked his right to an attorney and to
8  remain silent.  He was berated and upbraided by defendants.  Finally, Jones caused plaintiff
9  to come into the watch commander's office with defendants Sellan and Brunn.  Pompano was
10 concerned that he was being taken out of sight of the jail video camera and would be beaten
11 by defendants.  Inside the office, Jones, echoed by Sellan and Brunn, castigated plaintiff,
12 swore at him and impugned him for not apologizing.  Pompano was threatened with being
13 sent to the L.A. County Sheriff's Department Jail.

14    Finally, Jones conducted a purported nystagmus test, requesting plaintiff to focus on
15 and follow his finger as it moved horizontally from side to side.  Plaintiff was ordered several
16 times in rapid succession to sit, stand, sit, stand.  Finally, Jones told him "I've got nothing
17 to hold you on. Get the hell out of my police station."  Plaintiff was then released to join his
18 wife in the police station lobby, then exited to briefly return to the party to assure those still
19 there of his release and to collect their contact information as witnesses.

20    Plaintiff's wrists were red and marked from the overly tight handcuffs and his shoulder
21 was sore.  He contacted LAPD Captain Wallace Graves requesting that an Internal Affairs
22 team roll out and take a blood or breath sample.  Graves asked if he had been booked, and
23 upon being told that Pompano was not booked, Graves told him that he sounded fine and it
24 sounded like no big deal.  Pompano continued to experience emotional distress for which he
25 sought psychological counseling, first from an LAPD psychologist, then upon referral to his
26 own private psychiatrist.

27    LAPD received a formal complaint from police chief defendant Michael Lavin,
28 Hermosa Beach Police Department, accusing plaintiff of not being "cooperative" as a result

3

of the subject incident. Plaintiff's employer, LAPD, delayed beginning the investigation for nearly six months, then without contacting any of plaintiff's witnesses and, based almost entirely on defendants' self-serving fabrications, initially found plaintiff to have acted in an unbecoming way. This was plaintiff's first sustained complaint of any kind at LAPD. It was challenged and reversed in an administrative hearing which found no wrongdoing by plaintiff. Plaintiff was known at work as the cop who sued other cops. Though plaintiff had passed the written and oral portion of the Lieutenant's exam, he was passed over for promotion during the pendency of the internal affairs investigation into the subject incident. Defendants have made 3-4 other false personnel complaints against plaintiff *since* the subject incident which stalled plaintiff's ability to promote within LAPD. These bogus complaints by the petty, disgruntled defendants were also ultimately decided in plaintiff's favor, sometimes requiring court intervention through a Writ of Mandate to correct an apparent LAPD bias against plaintiff by lower echelon brass due to his suit against police officers in another department.

Ironically, defendants Sellan and Brunn were no strangers to wrongdoing, resulting in their own separate employers' decisions to impose administrative discipline upon them. Defendant Sellan, who (after the instant lawsuit was served) initiated <u>numerous</u> personnel complaints against plaintiff, had earlier been employed by Inglewood Police Department, then Manhattan Beach Police Department, leapfrogging to Hermosa Beach Police Department just ahead of imminent administrative discipline for lying and insubordination. As he was no longer with MBPD he could not be disciplined. He later sued MBPD for a purported violation of his statutory rights under California law for including the adverse findings. The MBPD chief's warning to defendant Michael Lavin not to hire Sellan went unheeded. Hermosa Beach Police Department is the third such position for defendant Brunn. He was previously employed by Los Gatos and Palo Alto Police Departments before joining Hermosa Beach PD. Brunn has a checkered past, including findings of dishonesty.

Plaintiff suffered emotional and employment damages due to the false arrest, excessive force and continuous years long harassment from defendants. In 2008 he resigned from

1 LAPD and moved his family back to Connecticut (where he had served honorably with a
2 local law enforcement agency. He is now director of security for a local school district.

3     Plaintiff has indicated that his incident-related emotional distress ended by 2008.
4 Nevertheless, defendants have continued to pester him at his current employer's location in
5 Connecticut and have sought to have him return to California for a second mental exam. A
6 motion for reconsideration will be filed shortly regarding that order.

7     The municipal liability allegations in this case are particularly strong: there are
8 numerous witnesses to remarkable acts of unpunished thuggery by members of the Hermosa
9 Beach Police Department, some recorded on video. None of this phased ex Chief Michael
10 Lavin, who remarked in his deposition that he doesn't like to discipline HBPD officers
11 because it's "bad for their careers." Therefore no discipline is meted out, maintaining a
12 culture of unmitigated corruption, which is fomented and joined by supervisors. A municipal
13 custom and practice will be shown of turning a blind eye to credible complaints of excessive
14 force, false arrest, false reports, false testimony and conspiracy to violate civil rights. This
15 will be shown to be the "moving force" in the multiplicity of wrongful and arrogant
16 misconduct shown in the instant case. Habitual misuse of Cal. Penal Code § 647(f) by
17 HBPD's officer to punish free speech in this and numerous other cases will be shown to be
18 an unrectified, well-known problem at MBPD; this will be shown coupled with denial of
19 requested chemical tests to establish *lack* of intoxication. Defendants' specious claim that
20 plaintiff was intoxicated is also belied

21     The specter of punitive damages looms large against the individual defendants.

22     Plaintiff's Fourth Amendment rights were egregiously violated, then defendants
23 subjected plaintiff, an LAPD Sergeant, to a campaign of harassment and intimidation at
24 work. This affected his bodily integrity, peace of mind, his employment opportunities, his
25 career, eventually contributing to a career change out of law enforcement.

26     Though his physical damages from the subject incident were nominal, his emotional
27 damages lasted for years and his promising career at LAPD, caused by maliciously false and
28 persistent personnel complaints from defendants, became a hostile work environment.

5

B.     **PLEADINGS**

**Federal Civil Rights Claims**

There are four causes of action brought under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983.   There are 5 supplemental state law claims.[1] The first cause of action is directed against the individual defendants Sellan and Brunn. It primarily alleges retaliation for plaintiff's exercise of the First Amendment right of free speech.  Plaintiff alleges that he was unreasonably seized by these defendants in reaction to and retaliation for his protected expression.   The retaliation was through a false arrest in violation of plaintiff's Fourth Amendment rights.  Punitive and exemplary damages are alleged in addition to general and special damages.

The second claim seeks damages against the individual defendants Sellan, Brunn, Jones and Lavin for violation of plaintiff's Fourth Amendment rights through the use of unreasonable seizure with excessive force (including an unlawfully prolonged detention at the police station where it became obvious that there was no lawful basis to hold plaintiff.)

Plaintiffs' Third Cause of Action seeks relief from the City of Hermosa Beach resting on *Monell v. N.Y. Dept. of Social Services*, 436 U.S. 658 (1978) alleges that Plaintiff's rights deprivations are proximately caused by the police department's historical indifference to behavior identical to that visited upon plaintiff.[2]

In the Fourth claim, plaintiff alleges a municipal failure to train under *City of Canton v. Harris* (1989) 489 U.S. 378, 109 S.Ct. 1197 and an individual failure of defendants Lavin and Jones to supervise pursuant to *Larez v. City of Los Angeles* 946 F.2d 630, 645 (9th Cir. 1991), *Watkins v. City of Oakland* 145 F.3d 1087 (9th Cir. 1998).

Plaintiff's Fifth Claim is a supplemental one for battery arising under California law. Defendants Sellan and Brunn are named therein.

---

[1]Defendants moved for summary judgment or summary adjudication in 2006.  Apparently, to avoid the page limitation of a single motion, defendants filed three separate motions for hearing.  All of defendants' motions were denied by the court.  An interlocutory appeal taken by defendants was denied.

[2]Plaintiff's co-counsel Thomas Beck has brought three other lawsuits arising from similar misconduct by the City of Hermosa Beach, their Chief and individual officers.

1    The Supplemental Sixth Claim by plaintiff is for false arrest/ false imprisonment under

2  California law against defendants Sellan, Brunn, Jones and Lavin.

3    A Supplemental Seventh Claim by plaintiff against all defendants is for negligence.

4    Plaintiff's Supplemental Eighth Claim is for Intentional Infliction of Emotional

5  Distress against all defendants.

6    The Supplemental Ninth Claim is for violation of the California Bane Act, Civil Code

7  § 52.1 which, like 42 U.S.C. § 1983, in addition to general and special damages  for violation

8  of constitutional rights (under the California or United States Constitution), for attorney fees

9  to the prevailing plaintiff.

10

11    **C.    PERSONAL INJURIES SUSTAINED**

12    Pompano sustained significant, but temporary, physical injuries to his body. The dread

13  and fear of possibly being prosecuted upon false testimony, sent to the Los Angeles County

14  Jail as an LAPD Sergeant, administrative problems with his employer resulting from *years*

15  of false reports, including the subject incident and other fantasized bases for complaint by

16  defendant Lavin and defendant Sellan.

17    Pompano also sustained temporary physical injuries and 4-5 years of serious

18  psychological problems and treatment which support claims for general and special damages

19  caused by acts and omissions of these mendacious individual defendants and their

20  deliberately indifferent municipal culture of non-feasance and misfeasance.  Defendants'

21  outrageous campaign of administrative retaliation against plaintiff strongly supports the

22  imposition of punitive damages.

23

24    **D.    ITEMIZED STATEMENT OF DAMAGES**

25    **Medical Expenses:**        $80.00 co-pay per visit[3] for psychiatrist Palmer

26    **Lost wages/earnings:**      Plaintiff lost one day of work as a direct result of the

27

28

---

[3]Total amount will be calculated once Dr. Palmer's total bill is obtained.

subject incident. He also had to attend administrative hearings, meetings with his counsel regarding defendants' specious claims against him. Estimated loss of earnings as a direct result of subject incident is one day's pay. Loss of Lieutenant grade pay due to post lawsuit filing interference by defendant Sellan has not been calculated.

**Property loss:**          None

**Total Specials:**          **$10,000+ out of pocket**

### E.   PLAINTIFF'S AGE

Age 38 at the time of the underlying incident of October 4, 2003.

### F.   RES IPSA

Not applicable.

### G.   LAW AND REGULATIONS VIOLATED

a.   First, Fourth and Fourteenth Amendments to the United States Constitution

b.   California Penal Code Section 118.1 (false police report),

c.   California Penal Code Section 127 (subornation of perjury)

d.   California Penal Code Section 148.5 (false report of a crime)

e.   California Penal Code Section 149, (assault under color of law)

f.   California Penal Code Section 134 (preparing false evidence),

g.   California Penal Code Section 132 (offering false evidence),

h.   California Penal Code Section 137 (induce false testimony),

i.   California Penal Code Section 153 (compounding crime),

j.   California Penal Code Section 240 (assault)

k.   California Penal Code Section 242 (battery)

## H.    PUNITIVE/EXEMPLARY DAMAGES

The facts relied upon to support the claim for punitive damages against defendants are summarized in the Statement of the case, above.    This case presents *prima facie* circumstances entitling Plaintiff to significant punitive damages.

## II.    CONTENTIONS OF LAW

### A.    JURISDICTION OVER PLAINTIFFS' LAWSUIT.

Plaintiffs action is brought under the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983 and 1988) to redress deprivations under color of state law of a right, privilege or immunity secured by the constitution and the laws of the United States. [See *Monroe v. Pape*, 365 U.S. 167, 171 (1961)].

Jurisdiction over Plaintiffs action resides in this court by virtue of 28 U.S.C. § 1343(4), which confers original jurisdiction upon United States District Courts or any civil action authorized by or to be commenced by any person:

> "(4) To recover damages . . . under any Act of Congress providing for the protection of civil rights . . ."

### B.    ACTIONS REDRESSABLE UNDER 42 U.S.C. § 1983

Deprivation of the civil rights of any person within the jurisdiction of the United States will give rise to an action under the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983).[4] Under § 1983, a plaintiff must establish two elements:  First, that the conduct complained of was perpetrated by a person acting under color of state law; and second, that such conduct deprived plaintiffs of an interest protected by the Constitution or laws of the United States. [*Monroe v. Pape*, *supra*, 365 U.S. at 171; *Parratt v. Taylor*, (1981) 451 U.S. 527, 536; *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662, 668 (1986); *Cohen v.*

---

[4] 42 U.S.C. § 1983 provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ."

9

1  *Norris*, 300 F.2d 24, 30 (9th Cir. 1962); *Gregory v. Thompson*, 500 F.2d 59, 61 (9th Cir.
2  1962)].

3      Whether those elements are present in a given case is a federal question, to be
4  determined by federal standards. *Marshall v. Sawyer*, 301 F.2d 639, 646 (1962).

5      **1.  Under Color of State Law**

6      A person is acting under the color of state law whenever his action is undertaken by
7  virtue of and because it is clothed with authority conferred on him by the State. *Monroe,*
8  *supra* at 187; *Black v. Stephens*, 662 F.2d 181 (3rd Cir. 1981).  Conduct is under color of
9  state law whether or not permitted and indeed, even if proscribed by the law or Constitution
10 of the state; the test being only whether the conduct occurred when the officer was acting
11 under the authority granted him by the state. *Monroe, supra* at 184; *Marshall v. Sawyer*, 301
12 F.2d 639, 646 (9th Cir. 1962).This element of the charge is admitted.

13

14     **2.  Freedom from Reprisals for Verbal Challenges to Peace Officers**

15     "[T]he First Amendment protects a significant amount of verbal criticism and
16 challenge directed at police officers. *Houston v. Hill* (1987) 482 U.S. 451, 461 [96 L.Ed.2d
17 398, 411-412, 107 S.Ct. 2502.]  Indeed, '[t]he freedom of individuals verbally to oppose or
18 challenge police action without thereby risking arrest is one of the principal characteristics
19 by which we distinguish a free nation from a police state.' *Id.*, at pp. 462-463 96 L.Ed.2d at
20 pp. 412-413.  While the police may resent having abusive language 'directed at them, they
21 may not exercise the awesome power at their disposal to punish individuals for conduct that
22 is not merely lawful, but protected by the First Amendment."  *Duran v. City of Douglas,*
23 *Ariz.*, (9th Cir. 1990) 904 F.2d 1372, 1378. Plaintiff's non-profane characterization of
24 defendants, directed to his friend Brian Loudermilk, not defendant Sellan and Brunn was
25 justified and cannot form the basis of probable cause for an arrest or detention. "Obscene
26 words and gestures" toward the police to "oppose or challenge police action" is "not merely
27 lawful, but [constitutionally] protected. *Duran, supra* at p. 1378.

28     A plaintiff who alleges he has been punished by retaliatory action for exercising the

1  protected right to challenge officers under the First Amendment states a cause of action

2  cognizable under § 1983.  The reprisal may take the form of unwarranted uses of force as

3  punishment, groundless arrest or disciplinary proceedings.  *Guilford v. Pierce County* 136

4  F.3d 1345 (9th Cir. 1998)(error not to instruct jury that Plaintiff had the right to verbally

5  challenge the officer's misconduct without a penalty exacted by the officer-plaintiff arrested

6  for "interference"); *Knox v. Southwest Airlines* 124 F.3d 1103 (9th Cir. 1997)(plaintiff's

7  profane demand for officers to identify themselves resulted in trumped up trespassing arrest

8  which jury could believe was retaliation for protected speech); *Block v. Ribar* 156 F.3d 673

9  (6th Cir. 1998)(defendant sheriff retaliated against plaintiffs for denouncing him as

10  incompetent, First Amendment guarantee violated);*Franco v. Kelly* 854 F.2d 584, (2d Cir.

11  1988)(false disciplinary charges made by defendant to retaliate against plaintiff's whistle

12  blowing). Retaliation is an independently cognizable wrong redressable under Section 1983.

13  *Nadell v. Las Vegas Metropolitan Police Department*, 268 F.3d 924, 929 (9th Cir. 2001).

14      Plaintiff maintains that he was victimized and abused by the defendants largely

15  because he commented unfavorably about defendants, within their earshot, to his friend Brian

16  Loudermilk.  Sellan's unprovoked and malicious violence during the false arrest of Pompano

17  arose from Sellan's lack of self-control.  It also flowed from the abject failure of the Chief

18  of Police to investigate and discipline misconduct.[5]  Sellan's false report and false testimony

19  were to cover up his misconduct, as well as Brunn's failure and refusal to intervene or to

20  reveal it.

21

22      **3.   Freedom From Unreasonable Uses of Force**

23      Among the historic liberties protected from deprivation by agents of the state without

24  due process is the "right to be free from, and to obtain judicial relief for, unjustified

25  intrusions of personal security". *Ingram v. Wright*, 430 U.S. 651 (1977).

26      The physical integrity of the individual is secured from arbitrary -- and even grossly

27  negligent -- police violence by the Fourth Amendment to the United States Constitution.

28      [5]In a well-publicized matter, another Hermosa Beach police officer was stopped and/or arrested at the Mexican-American border attempting to smuggle illegal steroids.  He continues to work at HBPD.

*Graham v. Conner*, 490 U.S. 386, 109 S.Ct. 1865 (1989):

> "Where, as here the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable seizures' of the person."
>
> Today we make explicit . . . and hold that *all* claims that law enforcement officers have used excessive force --deadly or not-- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims". *Graham v. Conner*, 490 U.S. 386, 109 S.Ct. 1873.

[*See also*; *Blanford v. Sacramento County*, 406 F.3d 110, 1110 (9th Cir. 2005); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694 (1985); *Liston v. County of Riverside*, 120 F.3d 965, 976 (9th Cir. 1997); *LeLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) ; *Alexander v. City and County of San Francisco*, 29 F.3d 1355 (9th Cir. 1994); *Hopkins v. Andaya*, 958 F.2d 881 (9th Cir. 1992); *Del Fargo v. City of San Juan Bautista*, 857 F.2d 638 (9th Cir. 1988); *Robins v. Harum*, 773 F.2d 1004 (9th Cir. 1985)]. "The question is not simply whether the force was necessary to accomplish a legitimate objective; it is whether the force used was reasonable in light of *all* the relevant circumstances." *Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991)(emphasis in original). "The force used must be balanced against the need for that force." *Deorle* v. *Rutherford*, 272 F.3d 959 (9th Cir. 2001).

Forcibly handcuffing a person where there is no basis for the arrest is an inherently unreasonable use of force. *Palmer v. Sanderson*, 9 F.3d 1433, 1434-36 (9th Cir. 1993); *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989). No lasting injury need be proven to sustain an unreasonable use of force claim under the 4th Amendment. "Under Fourth Amendment jurisprudence, the law is well settled that a plaintiff may recover nominal damages without proof of actual injury for unreasonable intrusions on one's bodily integrity." *Headwaters Forest Defense v. County of Humbolt*, 240 F.3d 1185, 1199, (9th Cir. 2000) quoting *Larez v. City of Los Angeles*, 946 F.2d at 640, superceded on other grounds *Headwaters II*, 276 F.3d 1125 (9th

Cir. 2002); *Gray v. Spillman*, 925 F.2d 90, 93 (4th Cir. 1991); *Telfair v. Gilberg*, 868 F.Supp.
1396, 1412 (S.D. Ga. 1994).; *Robinson v. Solano County*, 278 F.3d 1007, 1014-15 (9th Cir.
2002)(*en banc*)(holding pointing firearm at unarmed misdemeanor suspect adequately
alleged excessive force claim). *See also, Turmon v. Jordan,* 405 F.3d 202, 208 (4th Cir.
2005)(holding officer not entitled to qualified immunity for pointing firearm at motel guest
and handcuffing him because there was no reasonable suspicion the individual posed a
threat; *Jacobs v. City of Chicago*, 215 F.3d 758, 774-75 (7th Cir. 2000) gun pointing
unreasonable to the circumstances; *Baker v. Monroe Township*, 50 F.3d 1186, 1192-94
(3rdCir. 1995)(pointing guns during drug raid where circumstances did not justify could be
excessive).

### 4.    Freedom from Unreasonable Seizures

It is a "bedrock Fourth Amendment precept" that "a police officer may arrest a suspect
only if he has probable cause to believe a crime has been committed." *Beier v. City of
Lewiston,* 354 F.3d 1058, 1065 (9th Cir. 2004) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964);
see also *Dubner v. City and County of San Francisco,* 266 F.3d 959, 964 (9th Cir.
2001)(noting that a claim for unlawful arrest is cognizable under § 1983 as a violation of the
Fourth Amendment).    To prevail on a § 1983 false arrest claim, plaintiff must show the
absence of probable cause for his arrest. See, *e.g., Dubner* 266 F.3d at 964; *Cabrera v. City
of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998)(per curiam) citing *George v. City of
Long Beach*, 973 F.2d 706, 710 (9th Cir. 1992). In this case, plaintiffs allege the defendants
manufactured the facts which caused them to be criminally charged as part and parcel of their
seizures and booking when each officer knew plaintiffs committed no crime.

Probable cause exists when, under the totality of circumstances known to the arresting
officer, a reasonable person would believe the suspect committed a crime. See, *Dubne*r, 266
F.3d at 966; see also, *e.g. Peng v. Mei Chin Penghu* 335 F.3d 970, 976 (9th Cir. 2003).
"Probable cause is generally a question for the jury, " and can be decided as a matter of law
only if "no reasonable jury could determine that there was a lack of probable cause." See,

*Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990)(citing *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir. 1984)). It is, moreover, a wholly objective standard, i.e., the arresting officer's subjective intent or motivation is irrelevant. See, *e.g. Whren v. United States*, 517 U.S. 806, 813, (1996).

"Although the plaintiff bears the burden of proof on the issue of unlawful arrest, she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the defendant to provide some evidence that the arresting officers had probable cause for a warrantless arrest. The plaintiff still has the ultimate burden of proof, but the burden of production falls on the defendant." *Dubner,* 266 F.3d at 985 (citing, inter alia, *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 1978); see also, *Fitzgerald v. City of Los Angeles*, 485 F.Supp2d 1137 (C.D.Cal. April 20, 2007).

Applied to these plaintiffs, the defendants effort to validate their behavior and the plaintiffs arrests fails to demonstrate objectively reasonable facts supporting either a violation of Penal Code section 148(a)(1) and indeed the evidence will prove that defendants' evidence of probable cause was maliciously manufactured.

### 5. <u>Failure to Intervene Violates Constitutional Rights</u>

Law enforcement officers have an affirmative duty to enforce the law and preserve the peace. This includes stopping other police officers from violating the law or depriving a suspect of a constitutional right. A peace officer may not ignore the duty imposed on his office and, having the opportunity, fail to stop or deter other law enforcement officers from illegally punishing or using unnecessary or excessive force upon a third person in his presence. "Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen,' *Cunningham v. Gates,* 229 F.2d 1271, 1289 (9th Cir. 2000)(quoting *U.S. v. Koon,* 34 F.3d 1416, 1447, n. 25 (9th Cir. 1994); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990); *Bruner v. Duniway*, 689 F.2d 442 (6th Cir. 1982); *Webb v. Hiyrel*,  713 F.2d 405 (8th Cir. 1979) [holding such duty requires prevention of unlawful use of force even if inflicted by superior officers]; *Jennings v.*

14

1  *Daniels*, 476 F.2d 1271 (8th Cir. 1973);  *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972);

2  *Symkowski v. Miller*, 294 F.Supp. 1254 (E.D. Wis. 1969); *Moon v. Winfield*, 368 F.Supp. 843

3  (N.D. Ill. 1973);  *Armster v. City of Riverside*, 611 F.Supp. 103 (C.D.Cal. 1985).

4         While the case law imposing bystander liability primarily concerns brutality claims,

5  the same principle applies to the prevention of an illegal or unlawful arrest and conspiracies

6  to deprive civil rights. 42 U.S.C. § 1986;  *Gagnon v. Ball*, 696 F.2d 17, 21 (2nd Cir. 1982).

7         Applied to these defendants, Brunn had a duty as an officer to put an immediate end

8  to the assaults on Pompano.  Jones as a supervisor had a duty as an officer and a supervisor

9  to release Pompano when the absence of any lawful basis to hold him quickly became

10 apparent. Brunn is also with failing to intervene in the unjustified seizure employed by each

11 of their co-defendants.

12

13  **C.    COMPENSATORY DAMAGES ARE RECOVERABLE FOR ALL**

14       **DETRIMENT PROXIMATELY RESULTING TO PLAINTIFF FROM**

15       **AN OFFICER'S MISCONDUCT**

16        Compensatory damages which may be awarded under Section 1983 are not limited to

17 out-of-pocket pecuniary loss, but may include compensation for any detriment which is the

18 natural or proximate consequence of the officer's misconduct.  *Memphis Community School*

19 *District v. Stachura*, 477 U.S. 299, 307 ("compensatory damages may include ...such injuries

20 as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'");

21 *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997)(embarrassment); *Chatman v. Slagel*, 107

22 F.3d 380, 384-85 (6th CIr. 1997) (intimidation, marital problems, weight loss, loss of sleep,

23 shock, humiliation); See: *Jackson v. Dukes*, 259 F.2d 3 (5th Cir. 1958). [Upholding a

24 $5,000.00 verdict for wrongful detention]; *Kerr v. City of Chicago*, 424 F.2d 1134, 1139-

25 1140 (7th Cir. 1970), such as pain and suffering; *Jenkins v. Averett*, 424 F.2d 1228, 1233 (4th

26 Cir. 1970); and emotional and mental distress. *Donovan v. Reinhold*, 433 F.2d 737 (9th Cir.

27 1970). See *Antelope v. George*, 211 F.Supp. 657 (D. Ind 1962) [tort against plaintiff's person

28 not prerequisite to recovery for mental suffering]; *Bloch v. Ribar* 156 F.3d 673 (6th Cir.

15

1998)(public disclosure of embarrassing private facts by defendant sheriff).

### D.    **EXEMPLARY DAMAGES**

Exemplary damages may be recovered in a Section 1983 action against individual defendants not only for conduct shown to be inspired by evil motive or intent, but also when involving reckless or callous indifference to federally protected rights of others. *Smith v. Wade*, 461 U.S. 30 (1983); *Carlson v. Green*, 446 U.S. 14, 22 (1978).

Personal animosity toward the plaintiff is not a prerequisite for awarding punitive damages. *Gill v. Manuel*, 488 F.2d 799, 801 (9th Cir. 1973); and neither is an award of compensatory damages. *Id.* at 802.

Federal common law regarding punitive damages not California law, applies. *Gordon v. Norman*, 788 F.2d 1194, 1199 (7th Cir. 1986).  The defendant's penury is provable at his discretion. *Arceneaux v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 767 F.2d 1498, 1503-1504 & n.1. (11th Cir. 1985); *Pacific Mutual Life Ins. Co. v. Haslip*, 111 U.S. 1032, 111 S.Ct. 1032, 1044-45 (1991) (approving post trial procedures to assess reasonableness of exemplary damage award.)

### E.    **SUPERVISORY LIABILITY**

"[A] supervisory official cannot be held liable under [§ 1983 ]on the theory of respondeat superior."  *Lindgren v. Curry*, 451 F.Supp.1073, 1075 (C.D. Cal 2006). A supervisory official may, however, "be liable for constitutional claims if he or she was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.*, (citing *Redman v. Warden of San Diego,* 942 F.2d 1435, 1446-47 (9th Cir. 1991)(en banc). A sufficient causal connection may be found where a constitutional deprivation is caused by a supervisor's "own culpable action or inaction in the training, supervision, or control of subordinates"; where a supervisor "acquiese[s] in the constititional deprivation of which a complaint is made"; or where the supervisor's "conduct . . . showed reckless or callous

1   indifference to the rights of others." *Cunningham*, 229 F.3d at 1271 (citing *Larez v. City of*

2   *Los Angeles,* 946 F.2d 630, 646 (9th Cir. 19991); accord *Menotti v. City of Seattle*, 409 F.3d

3   1113 (9th Cir. 2005).  Officer Jones as well as Chief Lavin are the key supervisory officials

4   upon whom liability may properly be imposed on these theories.

5

6   F.    **QUALIFIED IMMUNITY IS NOT AVAILABLE TO A PUBLIC**

7         **OFFICER WHO MANUFACTURES PROBABLE CAUSE**

8       Under the doctrine of qualified immunity, a state official is not  immune from liability

9   for the performance of discretionary functions if his conduct violates clearly established

10  rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800,

11  818, 102 S.Ct. 2727 (1982) 73 L.E.d2d 39 (1982); *Saucier v. Katz*, 533 U.S. 194, 201 121

12  S.Ct. 2151, 150 L.Ed.2d 272(2001). Qualified immunity is fact specific, *Ibid.*  "As the

13  qualified immunity defense has evolved, it provides ample protection to all but the plainly

14  incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341,

15  89 L.Ed.2d 271, 278 (1986).  In this case, this putative defense is disposed of as the

16  defendants conduct is prohibited by the California Penal Code and there is evidence that they

17  willfully violated the law.

18      The qualified immunity defense is answered by a preliminary determination based on

19  the facts as presented by the plaintiff, in the light most favorable to the plaintiff. *Saucier v.*

20  *Katz* 553 U.S. 201. If no constitutional right would have been violated were the plaintiff's

21  allegations established, there is no need for further inquiry.  On the other hand, if a violation

22  could be made out on a favorable view of the plaintiff's evidence, the next step is to ask

23  whether the right was clearly established. *Id.*  The relevant, dispositive inquiry in determining

24  whether a right is clearly established is whether it would be clear to a reasonable officer that

25  his conduct was unlawful in the situation that he confronted. *Id.*

26      In *Anderson v. Creighton*, 483 U.S. 635; 107 S. Ct. 3034 (1987), the Court stated:

27      [t]he contours of the right must be sufficiently clear that a reasonable official
        would understand that what he is doing violates that right.  This is not to say
28      that an official action is protected by qualified immunity unless the very action

                                        17

in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.  107 S. Ct. at 3139.

A peace officer defendant is forbidden qualified immunity against a claim when he manufactured or conspired to manufacture facts constituting  probable cause. *Malley v. Briggs*, 475 U.S. 335 (1986); *Mendecino Environmental Center v. Mendecino County*, 192 F.3d 1283, 1295 (9th Cir. 1999); *Harris v. Roderick*, 126 F.3d 1189, 1205 (9th Cir. 1997). *Del La Cruz v. Kauai County*, 537 U.S. 1053, 123 S.Ct. 608, 154 L.Ed.2d 531(2002).   In determining whether a particular search or seizure is reasonable, the court must determine whether the officer's action was justified *at its inception*, and whether it was reasonably related in scope to the circumstances which justified it in the first place. *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Qualified immunity is an affirmative defense and must be pleaded and proved by defendant. *Gomez v. Toledo*, 446 U.S. 35 (1980). This is an issue of law and may not be given to the jury. *Sloman v. Tadlock*, 21 F.3d 1462, 1467 (9th Cir. 1994); *Act Up!/Portland v. Bagley*, 988 F.2d 868 (9th Cir. 1993). "It is the defendant's burden to show a reasonable officer could have believed, in light of the settled law, that he was not violating a constitutional or statutory right." *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996), quoting *Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994)(internal ellipses omitted).

The qualified immunity defense is not available to a public entity or a policy making defendant sued in his/her official capacity in a §1983 action.  *Owen v. City of Independence*, 445 U.S. 622, 649-50.  See also *Brandon v. Holt*, 469 U.S. 464 (1985); *Sala v. County of Suffolk*, 604 F.2d 207 (2d Cir.1979)(routine strip search of woman, without probable cause or suspicion, subjects County to liability without good faith defense).

## G.    ATTORNEYS FEES MAY BE AWARDED TO PLAINTIFF IN A SECTION 1983 ACTION.

Plaintiffs may also recover reasonable attorneys fees in a Section 1983 suit pursuant to title 42 U.S.C. § 1988. *Stanford Daily v. Zurcher*, 550 F.2d 464 (9th Cir. 1978), *rev'd on*

*other grounds*, 435 U.S. 547 (1978); see *Morrow v. Dillard*, 580 F.2d 1284 (5th Cir. 1978).

Although recovery of attorneys fees is discretionary with the trial court, such fees should be awarded unless extraordinary reasons appear which would render such award unjust. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968); *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

## III.   EVIDENTIARY PROBLEMS

### A.     Burden of Proof

Plaintiffs' burden of proof as to civil right's claim is the same as for a tort: *Monroe v. Pape*, (1961) 365 U.S. 167, 187.

### B.     Defense burden to prove probable cause:

The allocation of proof in a false arrest case is to require the plaintiff to prove the absence of a warrant. *Gilker v. Baker*, 576 F.2d 245 (9th Cir. 1978), [plaintiff meets initial burden by pleading and proving no warrant]. The defendant bears the burden of proving probable cause. Defendants must competently establish each of the facts that constitute probable cause for the arrest they made of the plaintiff. *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir.1978)("Once a warrantless arrest is established, the burden of going forward with the evidence passes to the defendant."). See also, *Martin v. Duffie*, 463 F.2d 467 (10th Cir. 1972)(plaintiff who has been arrested without a warrant 'need only present a prima facie case of illegal arrest in order to sustain his burden"); *Patzig v. O'Neill*, 577 F.2d 841, 849 n.9 (3d Cir. 1978); *Dellums v. Powell*, 566 F.2d 167, 175-76 (D.C.Cir. 1977). If the defendant is unable to or refuses to come forward with any evidence that the arresting officers had probable cause and the plaintiff's own testimony does not establish it, the court should presume the arrest was unlawful." *Dubner v. City and County of San Francisco* (2001) 266 F.3d 959, 965.

A warrantless arrest is presumed illegal (California Evidence Code § 664), and the burden of providing justification is upon the defense. *Cervantez v. J.C. Penny Co.* 24 Cal.3d

1 | 579, 592 (1979); *Cameron v. Fogarty*, 649 F.Supp. 3,5 (E.D.N.Y. 1985).

2

3 | **C.    Admissibility of Defendants' Uncharged Misconduct**

4 | A witness or defendants character trait for untruthfulness and dishonesty may be

5 | proven by opinion or reputation testimony. F.R.E. 405, 608(a). Specific instances of

6 | dishonest conduct are admissible in the courts discretion if those events are probative of the

7 | witnesses' character trait.

8 | "Specific instances of the conduct of a witness, for the purpose of attacking or
supporting the witness' credibility, other than conviction of crime as provided
9 | in rule 609, *may not be proved by extrinsic evidence.* They may, however, in
the discretion of the court, if probative of truthfulness or untruthfulness, be
10 | inquired into on cross-examination of the witness (1) concerning the witness'
character for truthfulness or untruthfulness, or (2) concerning the character for
11 | truthfulness or untruthfulness of another witness as to which character of the
witness being cross-examined has testified." *Fed.R.Ev.* 608(b).(italics added)

12

13 | In § 1983 cases, federal courts have specifically upheld the admission of prior and

14 | subsequent uncharged misconduct relating to character traits other than dishonesty against

15 | peace officer defendants pursuant to Rule 404(b) in situations where the evidence tends to

16 | prove the uncharged misconduct is part and parcel of the individual officer's pattern or habit

17 | of abuse. *Carson v. Polley*, 689 F.2d 562, 572 (5th Cir. 1982) (reversing judgment for sheriff

18 | and deputies who used excessive force, finding performance evaluation report of deputy,

19 | stating he got into arguments with inmates and lost his temper quickly with consequent

20 | hostility towards other inmates, should have been admitted to show intent to harm and to

21 | impeach witness); *Commonwealth of Pennsylvania v. Baranyal*, (1981) 659 F.2d 306, 320

22 | (evidence, *inter alia*, of defendant police officer's brutal conduct, including events two (2)

23 | years old, was admissible under either Rule 404(b) or Rule 406 (pattern and practice); *accord*

24 | *O'Neill v. Krezemiski*, 839 F.2d 9, 10-11 (2nd Cir. 1988) (split decision) (admission of

25 | judgment for excessive force against police officer obtained one month prior). *See also: Hirst*

26 | *v. Gertsen*, 676 F.2d 1252 (9th Cir. 1982) (Rule 404(b) applied to identify injuring officer

27 | defendant based on prior similar misconduct); *Doty v. Seawall*, 908 F.2d 1053 (1st Cir 1990),

28 | *Leonard v. Argento*, 699 F.2d 874, 896 (7th Cir 1983).

20

1    Furthermore, FRE 404(b) incidents remain relevant and admissible notwithstanding

2  they occurred subsequent to the plaintiff's arrest. In *Ismail v. Cohen*, 899 F.2d 183 (2nd Cir.

3  1990) the Court of Appeals found no error in the admission of testimony and cross

4  examination of the officer defendant that he had committed misconduct similar to that

5  alleged in the case soon **after** the incident at issue.  The court found that this evidence

6  demonstrated pattern, intent, and absence of mistake under Rule 404(b).  Plaintiff maintains

7  that he was victimized by overlapping customs and practices historically concealed and

8  condoned by Hermosa Beach PD and the rank and file of that department, by and through a

9  code of silence, covering up excessive force by false arrests, false arrest reports

10  manufacturing probable cause for the uses of force and arrest, conspiracies to bring about

11  groundless criminal prosecutions and convictions on 148 and 647(f).

12    Federal Rules of Evidence 404(b), 405(a), 406 and 608(a)(b), provide for admissibility

13  of specific acts of misconduct.  Rule 404 allows other acts evidence to show modus operandi,

14  knowledge, absence of mistake, motive, etc.  Rule 405 admits roof of relevant character

15  traits, e.g., dishonesty, racism, quickness to violence, ill-temperament, by opinion testimony

16  and permits inquiry into specific instances of conduct on cross-examination and by directed

17  testimony where the traits are essential elements of the claim. Rule 406 admits

18  uncorroborated evidence of habit and practice.  Rule 608(a) permits attacks on the officer's

19  credibility by opinion and reputation testimony and subsection (b) allows the court to admit

20  specific instances of conduct if probative of untruthfulness. [See generally: *Uncharged*

21  *Misconduct Evidence*, Edward J. Imwinklreid, Chapter 7, Civil Cases.]

22

23    **D.    Non-final Opinions or Adjudications of Personnel Complaints Against**

24         **Plaintiff (Mostly Brought *after* the Subject Incident by Defendants) Are**

25         **Inadmissible or Properly Excludable**

26    In a vindictive lashing out at plaintiff, defendants have unleashed a years-long

27  campaign of retaliation against Mark Pompano, a well-respected LAPD sergeant plaintiff,

28  by making *seriatim* personnel complaints to his employer.  Plaintiff was subjected to

vilification, anxiety, expense and stalled promotion from these false and sometimes wildly over the top baseless allegations, instigated primarily by defendant Sellan - himself no stranger to findings of dishonesty and insubordination.   During this over litigated defense, defendants have determined to smear plaintiff with allegations that did not hold up in a final adjudication.   A full day of deposition of plaintiff on June 2, 2009 was spent by defense counsel confronting plaintiff with intermediate, non-final opinions or adjudications not resulting in a final judgment or enforceable final administrative finding while plaintiff was employed by LAPD.[6]   Defendants have raised this as a purported defense to the action.   It should be excluded as irrelevant or under FRE Rule 403. According to the City Charter of the City of Los Angeles which employed plaintiff as a police sergeant, administrative discipline is ultimately determined by the Chief of Police[7], subject to administrative review in the Superior Court of California, pursuant to writ procedure provided by California Code of Civil Procedure Sections 1094.5 and 1094.6.   Defendants seek to introduce opinions of station level employees, administrative recommendations or other **non-final** adjudications regarding this morass of personnel complaint investigations they engendered.

The court has bifurcated liability from damages at plaintiff's request.   None of the above should be raised in the first phase, if at all.   Plaintiff will move the court to exclude all of this material in an *in limine* motion before trial.   Alternatively, plaintiff will request a pre-trial or trial hearing at which defendants will be required to establish a proper legal foundation for this matter before adducing any such evidence.   Plaintiff contends that they will not be able to do so.   Plaintiff's only sustained complaint involved his irrelevant playful response to a prank by a fellow LAPD officer and co-worker who posted a flyer advertising plaintiff's vehicle for sale – when it was not for sale.   Both plaintiff and the other officer received days off for their involvement in that behavior.   Otherwise, plaintiff has no final adjudications against him while he was with LAPD.   Defendants' attempt to hijack the trial with spurious allegations, not ultimately sustained in a final judgment or enforceable

---

[6]As discussed, *supra*, plaintiff resigned his employment at LAPD in 2008.   He then moved with his family to Connecticut where he is now security director for the Newtown School District.

[7]Los Angeles City Charter, Section 1070.

1  adjudication have no place in this lawsuit.  A series of mini-trial (actually retrials) would be

2  the result if this material is allowed to be introduced by the defendants.

3        Only relevant final adjudications, not reversed by a Superior Court writ, would even

4  qualify as having evidentiary foundation – if relevant.    There are no relevant final

5  adjudications which were not reversed by a Superior Court writ or as a result thereof.

6  Accordingly, there is nothing admissible against plaintiff in this action from the personnel

7  complaint activity.  This will be a significant evidentiary ruling for the court herein.

8

9      **E.**    **Specific Intent to Deprive Plaintiff of a Constitutional Right is Not an**

10                 **Element of a Proof in a Section 1983 Action.**

11        To prove a violation of a right protected by the Constitution or laws of the United

12  States under Section 1983, plaintiff is not required to establish an officer's bad motive or evil

13  intent. *Cohen v. Norris*, 313 F.2d 24, 29-30 (9th Cir. 1963); *Stringer v. Dilger*, 313 F.2d 536,

14  540 (10th Cir. 1963); *Joseph v. Rowlen, supra*, at 370; *Jenkins v. Averett, supra*, at 1232; cf.,

15  *Whirl v. Kern*, 407 F.2d 781 (5th Cir. 1969) [prisoner is held in jail nine months beyond his

16  term].

17        The reason for this rule is stated in *Monroe v. Pape, supra* at 187:

18            "Section 1979 [*i.e.*, 42 U.S.C. § 1983] should be read against the

19            background of tort liability that makes a man responsible for the
          natural consequences of his action."

20

21      **F.**    **Punitive Damages**

22        Unlike the California rule, Plaintiff doe not have the burden of establishing the

23  defendant's financial wherewithal.   In federal civil rights actions, federal common law

24  regarding punitive damages not state law, applies. *Gordon v. Norman*, 788 F.2d 1194, 1199

25  (7th Cir. 1986).  *Arceneaux v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 767 F.2d 1498,

26  1503-1504 & n.1. (11th Cir. 1985); *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S.1,  111

27  S.Ct. 1032, 1044-45 (1991) (approving post trial procedures to assess reasonableness of

28  exemplary damage award.)

1    Furthermore, the standard of proof is not clear and convincing, but preponderance of
2  the evidence. *Bird v. Figel*, 725 F.Supp. 406, 412 (N.D.Ind.1989).

3

4  **IV.        A TIMELY JURY DEMAND WAS MADE BY PLAINTIFF IN**
5  **CONFORMITY WITH RULE 38, FEDERAL RULES OF CIVIL**
6  **PROCEDURE AND LOCAL RULE 38-1**

7

8  DATED:  August 31, 2009                    Respectfully Submitted,

9

                                             /S/
10 _____
                                             GARY S. CASSELMAN
11                                           Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28